1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUMA SE, et al.,

                      Plaintiffs,

      v.

BROOKS SPORTS, INC.,

                   Defendant.

CASE NO. 2:23-CV-00116-LK

ORDER DENYING MOTIONS TO
SEAL

      This matter comes before the Court on Defendant Brooks Sports, Inc.'s motion to seal its answer and counterclaims. Dkt. No. 120. Brooks also recently filed a motion to seal its motion for judgment on the pleadings that seeks to seal some of the same content. Dkt. No. 140. Brooks opposes sealing, but filed the motions pursuant to the parties' stipulated protective order because the subject filings contain material that Plaintiffs PUMA SE and PUMA North America Inc. (collectively, "PUMA") designated as confidential. Dkt. No. 120 at 1–2. For the following reasons, the Court finds that PUMA has failed to articulate sufficiently compelling reasons to seal that material.

# I.   BACKGROUND

In July 2022, PUMA filed this action in the Southern District of Indiana against Brooks for trademark infringement, patent infringement, and unfair competition. Dkt. No. 1. The parties filed a stipulated protective order patterned after that District's model protective order to protect certain information that may be produced in discovery. Dkt. No. 64. After the case was transferred to this District, Dkt. Nos. 66, 67, the parties filed a second stipulated protective order of substantially similar scope, Dkt. Nos. 91, 92. The order "does not presumptively entitle parties to file confidential information under seal," and does not excuse the parties from complying with Local Civil Rule 5(g), which governs sealing and redaction of court records. Dkt. No. 92 at 1, 17.

On January 24, 2024, PUMA amended its complaint to add a new federal trademark infringement claim based on a recently issued trademark registration. Dkt. No. 117. In response, Brooks filed an amended answer and counterclaims. Dkt. Nos. 122, 123. Because Brooks' counterclaims include information acquired in discovery from PUMA that was designated as "Confidential" under the parties' second protective order, Brooks filed the information under seal and filed a corresponding motion to seal. Dkt. No. 120; *see also* LCR 5(g)(3) ("a party wishing to file a confidential document it obtained from another party in discovery may file a motion to seal" but need not provide a legal and factual basis for keeping the document under seal).

# II.   DISCUSSION

## A.   Legal Standard

Courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when a district court considers a sealing request, "a strong presumption in favor of access is the starting point." *Id.* (cleaned up). This presumption, however, "is not absolute and can

be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999)).

The standard for determining whether to seal a record depends on the filing with which the sealed record is associated and whether such filing is "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1102 (9th Cir. 2016). If the filing at issue is more than tangentially related to the merits of the case, the court must apply the "compelling reasons" standard to the motion to seal. *See id.* If the filing is only tangentially related to the merits, the party seeking to seal the records need only show "good cause." *See id.*

Additionally, in this District, parties moving to seal documents must comply with the procedures established by Local Civil Rule 5(g). Under that rule, the party who designates a document confidential must provide a "specific statement of the applicable legal standard and the reasons for keeping a document under seal, including an explanation of: (i) the legitimate private or public interests that warrant the relief sought; (ii) the injury that will result if the relief sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not sufficient." LCR 5(g)(3)(B). Brooks certifies that it has conferred with PUMA regarding the motion to seal as required by the Court's Local Rules, and that PUMA asserted that portions of paragraphs 13, 46, 81, 138–140, 142–44, 146, and 192–97 should be filed under seal. Dkt. No. 120 at 2–3.

**B.    PUMA's Requests to Seal**

In its brief, PUMA maintains that content in paragraphs 46, 81, 138, 140, and 146[1] should be sealed. Dkt 126 at 5. PUMA has failed to provide compelling reasons supporting its position.

---

[1] PUMA lists paragraph 143 in its briefing, but its description of the paragraph makes it clear that it is referring to paragraph 146. *See* Dkt. No. 126 at 10 (referencing an email chain and statement from Mr. Vella that are not included in paragraph 143, but are included in paragraph 146).

ORDER DENYING MOTIONS TO SEAL - 3

1    1. <u>The "Compelling Reasons" Standard Applies</u>

2         As a threshold matter, the parties appear to agree that PUMA must meet the stringent

3    "compelling reasons" standard rather than the more relaxed "good cause" standard for sealing.

4    Dkt. No. 126 at 6; Dkt. No. 128 at 2–3. To the extent there is any disagreement, however, the Court

5    clarifies that the "compelling reasons" standard applies.

6         The "good cause" standard requires the party seeking protection to show "specific

7    prejudice or harm" for each document it seeks to protect. *Foltz*, 331 F.3d at 1130. "Broad

8    allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice.

9    *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v.*

10   *Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). And a "good cause" showing will not,

11   without more, satisfy the more exacting "compelling reasons" test. *Kamakana*, 447 F.3d at 1180.

12   Under this higher "compelling reasons" standard, the Court "may seal records only when it finds

13   a compelling reason and articulates the factual basis for its ruling, without relying on hypothesis

14   or conjecture." *Ctr. for Auto Safety*, 809 F.3d at 1096–97 (cleaned up). Those compelling reasons

15   must "outweigh the general history of access and the public policies favoring disclosure[.]"

16   *Kamakana*, 447 F.3d at 1178–79. This is achieved when, for example, a court filing might "become

17   a vehicle for improper purposes," *Nixon*, 435 U.S. at 598, or be used "to gratify private spite,

18   promote public scandal, circulate libelous statements, or release trade secrets," *Kamakana*, 447

19   F.3d at 1179.

20        Although the Ninth Circuit has not specified whether a party seeking to seal its operative

21   pleading must meet the "good cause" or "compelling reasons" standard, numerous courts within

22   the Circuit have held that the compelling reasons standard applies because a complaint is the

23   foundation of a lawsuit. *See, e.g.*, *MSK Covertech, Inc. v. Fevisa Indus., S.A. de C.V.*, No. 23-CV-

24   00741-DMS-MSB, 2023 WL 3295809, at *2 (S.D. Cal. May 4, 2023); *In re Google Location Hist.*

1    *Lit.*, 514 F. Supp. 3d 1147, 1161–62 (N.D. Cal. 2021); *Brown v. Brown*, No. CV 13-03318 SI,

2    2013 WL 12400041, at *1 (N.D. Cal. Dec. 30, 2013). Because Brooks' counterclaims against

3    PUMA are foundational to this case, PUMA must meet the "compelling reasons" standard.[2]

4           2.   PUMA Has Failed to Articulate Compelling Reasons to Seal

5           Brooks contends that the information at issue should not be sealed because it is "already

6    public or would be public but for PUMA's misconduct." Dkt. No. 120 at 1. PUMA denies that the

7    information is public and argues that the information should instead remain under seal because it

8    "contains confidential, non-public information relating to PUMA's business plans, marketing and

9    advertising plans, and design and development information, the disclosure of which is likely to

10   cause competitive harm." Dkt. No. 126 at 5.

11          *(a) Paragraph 46*

12          PUMA claims that the redacted portion of paragraph 46 "reflects confidential marketing

13   and business strategy information, the disclosure of which could harm PUMA." Dkt. No. 126 at 7.

14   Specifically, "the excerpt is a confidential internal communication relating to marketing strategy

15   for products sold in connection with PUMA's NITRO trademark" that PUMA still practices even

16   though it ultimately did not adopt the strategy in this case. *Id.*; Dkt. No. 127 at 2–3. According to

17   PUMA, making the information public could cause it harm because its "competitors could use this

18   insight into PUMA's marketing strategies to unfairly gain advantage by adopting similar

19   marketing strategies without having to expend the effort and resources PUMA did in reaching its

20   branding strategies." Dkt. No. 126 at 7–8; *see also* Dkt. No. 127 at 3.

21          That could be the case if the excerpt actually provided the insight PUMA claims it does.

22

23   [2] The same standard applies to the request to seal Brooks' motion for judgment on the pleadings. *See Kamakana*, 447
     F.3d at 1180; *Malig as Tr. for Malig Fam. Tr. v. Lyft, Inc.*, No. 19-CV-02690-HSG, 2021 WL 3709162, at *3 (N.D.
24   Cal. Aug. 20, 2021) ("Because the motion for judgment on the pleadings is more than tangentially related to the
     underlying action, the Court applies the 'compelling reasons' standard in evaluating the motions to seal.").

But the excerpt is merely a generic and high-level description of PUMA's naming convention that, as Brooks points out, would be apparent to anyone who has seen its marketing materials. *See, e.g.*, Dkt. No. 123 at 26–27. Moreover, PUMA does not identify how giving its competitors a glimpse into its garden-variety naming convention would hurt it. "[C]onclusory offerings"—such as PUMA's general assertions that disclosure would result in possible competitive harm—"do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Kamakana*, 447 F.3d at 1182–83; *see also Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-cv-04312-BLF, 2020 WL 1245352, at *3 (N.D. Cal. Mar. 16, 2020) (denying request to seal based on blanket claims that parties' "competitive standing[s] could be significantly harmed" by disclosure); *U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. C10-03724-CW, 2013 WL 4426507, at *2 (N.D. Cal. Aug. 14, 2013) ("[S]uch broad and generic statements do not meet the standard for sealing information[.]").

After reviewing the content at issue, the Court finds that PUMA has failed to make a compelling, particularized showing regarding how the naming convention mentioned in paragraph 46 could be used by competitors to harm its business interests.

### (b) Paragraph 81

PUMA seeks to seal the contents of paragraph 81 because they depict a "confidential mockup of a potential display" that "was part of an internal brainstorm session about marketing strategy and was never released publicly." Dkt. No. 126 at 8. PUMA claims that disclosure of this mockup "would competitively harm PUMA because the differences between this creative mockup and the displays that have been put into the market would give competitors insight into PUMA's marketing strategies that PUMA has expended resources to develop." *Id.* at 9.

As with its request for sealing paragraph 46, PUMA fails to provide any substantive explanation of how it would suffer competitive harm if paragraph 81's contents were made

public—especially in light of the similarities between the mockup and other displays PUMA has made public. *Compare* Dkt. No. 123 at 34 *with, e.g.*, Dkt. No. 121 at 5. Paragraph 81 does not actually describe any of PUMA's marketing strategies; even a competitor who took the time to compare PUMA's "creative mockup" with the actual displays that were put into the market could only speculate as to what marketing strategies may have led PUMA to make the minute changes it did. This is substantially different from the technical marketing strategies and data that courts have agreed to seal to avoid "competitive harm." *See, e.g.*, *Clean Crawl, Inc. v. Crawl Space Cleaning Pros, Inc.*, No. C17-1340-BHS, 2019 WL 6829886, at *2 (W.D. Wash. Dec. 13, 2019) (granting motion to seal confidential business information and deposition testimony that include "marketing and advertising techniques and budgets"); *Treehouse Avatar LLC v. Valve Corp.*, No. C17-1860-RAJ, 2019 WL 291664, at *2 (W.D. Wash. Jan. 23, 2019) (granting motion to seal "proprietary technical business information that is not already in the public domain"); *Algarin v. Maybelline, LLC*, No. 12-cv-3000-AJB (DHB), 2014 WL 690410, at *3 (S.D. Cal. Feb. 21, 2014) (granting motion to seal "compilation of sales data, market research, consumer research, advertising data and marketing strategy").

Therefore, PUMA's request to seal the contents of paragraph 81 is denied.

### (c) Paragraphs 138, 140, and 146

PUMA requests the sealing of redacted portions of paragraphs 138, 140, and 146 because they "contain confidential information revealing PUMA's design strategy and its approach to product design and development." Dkt. No. 126 at 9.[3] According to PUMA, Paragraph 138 should be sealed because it "depicts an image from a mood board created by the inventor of the

---

[3] PUMA also seeks to seal Brooks' references to paragraphs 138 and 140 in Brooks' motion for judgment on the pleadings. Dkt. No. 140 at 1; Dkt. No. 141 at 33. To the extent PUMA seeks to seal references to paragraph 139 as well, it has waived that argument by not asking the Court to seal paragraph 139 in connection with Brooks' motion to seal its answer and counterclaims.

1    [D897,075] patent." Dkt. No. 126 at 9; Dkt. No. 127 at 1–2. PUMA claims that "[w]hile the mood

2    board contains a compilation of public images, the mood board itself is a highly confidential design

3    document that is intimately tied to PUMA's design process." Dkt. No. 126 at 9–10; Dkt. No. 127

4    at 1–2. However, the Court cannot discern—and PUMA fails to explain—how this aggregation of

5    publicly available images "provide[s] PUMA's competitors a unique look into PUMA's design

6    process and inspiration for future designs, which would competitively harm PUMA." Dkt. No. 126

7    at 10; Dkt. No. 127 at 2. PUMA's real concern appears to be that the mood board suggests that its

8    inventor was inspired by other brands' designs; however, PUMA's case for sealing that "highly

9    confidential" part of its design process, Dkt. No. 126 at 9–10, is undermined by the inventor

10   publicly posting an image from one brand's runway show—an image that takes up nearly half of

11   his mood board—on his Instagram account with a sketched design for a PUMA shoe over the

12   image, *see* Dkt. No. 128 at 5.

13          PUMA's reasons for sealing the redacted portions of paragraphs 140 and 146 are equally

14   unavailing. PUMA claims that "public disclosure of this information [would] harm PUMA b[y]

15   providing competitors insight into its design processes." Dkt. No. 126 at 10; *see also* Dkt. No. 121

16   at 2–3. Here too PUMA provides no explanation as to how this purportedly "unique look into

17   PUMA's design process" would result in competitive harm. As with PUMA's advertising mockup,

18   the content at issue in these paragraphs provides such little information that it would be practically

19   useless to competitors. And again, PUMA's real concern appears to be that these paragraphs

20   directly tie its inventor to the Prada Cloudbust shoe. PUMA takes no issue with the following

21   portions of Brooks' counterclaims:

22       • "13. . . . The named inventor of the D075 Patent based the claimed design on existing
           prior art shoes, including a Prada shoe known as the Cloudbust." Dkt. No. 123 at 13.

23
         • "143. Mr. Vella was aware of the Prada Cloudbust and the Reebok x Vetements sock
24         shoe prior to the filing of the patent application for the D075 Patent. He also knew that

they formed the basis of the D075 Patent design and were material prior art." *Id.* at 64.[4]

- "192. Puma has represented that the Puma Mode XT shoe is an embodiment of the D075 Patent. The Puma Mode XT was based on the design of the prior art shoe, the Prada Cloudbust. It was also inspired by Reebok x Vetements. Mr. Vella, the sole D075 Patent inventor, was aware that both these designs formed the basis of the D075 Patent design and are material prior art to the D075 Patent design." *Id.* at 72.

Paragraphs 138, 140, and 146 merely provide corroborating evidence for the above allegations. That does not make them confidential. *See Kamakana*, 447 F.3d at 1179 ("The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records.").

Because PUMA has failed to provide compelling reasons to seal the redacted contents of paragraphs 138, 140, and 146, its request to keep the contents under seal is denied.

## III.   CONCLUSION

For the foregoing reasons, the Court DENIES Brooks' motions to seal. Dkt. Nos. 120, 140. The Court orders the Clerk to UNSEAL Brooks' unredacted and sealed Answer to Amended Complaint and Counterclaims, Dkt. No. 123, and its unredacted and sealed Motion for Judgment on the Pleadings, Dkt. No. 141.

Dated this 10th day of April, 2024.

Lauren King
United States District Judge

---

[4] To the extent PUMA seeks to seal paragraph 143, it provides no compelling reason to do so.

ORDER DENYING MOTIONS TO SEAL - 9