UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PUMA SE et al., | CASE NO. 2:23-cv-00116-LK |
| Plaintiffs, | ORDER ON MOTIONS TO SEAL |
| v. | |
| BROOKS SPORTS, INC., | |
| Defendant. | |

This matter comes before the Court on the motion of Plaintiffs PUMA SE and PUMA N.A. (collectively, "PUMA") to seal their motion to compel and accompanying exhibits, Dkt. No. 166; *see also* Dkt. Nos. 171–73, as well as the motion of Defendant Brooks Sports, Inc. to seal and redact certain exhibits supporting its opposition to PUMA's motion to compel, Dkt. No. 194; *see also* Dkt. Nos. 199–200. For the following reasons, the Court grants in part PUMA's motion to seal and grants Brooks' motion to seal.

## I. BACKGROUND

The Court adopts the factual background articulated in its May 14, 2024 Order, Dkt. No. 154 at 2–5, its August 8, 2024 Order, Dkt. No. 188 at 1–3, and its October 11, 2024 Order, Dkt.

ORDER ON MOTIONS TO SEAL - 1

No. 209 at 2–4.

## II. DISCUSSION

Brooks asks the Court to (1) permit PUMA to file Exhibits 2–10 to its motion to compel under seal and to redact confidential information in PUMA's motion to compel and Exhibits 12 and 17 to that motion, Dkt. No. 183 at 1; *see also* Dkt. Nos. 171-1; 171-2; 171-3; 171-4; 171-5; 171-6; 171-7; 171-8; 171-9; 172; 173;[1] and (2) permit Brooks to file Exhibits A–C of the Pepperl Declaration to its Opposition under seal and to redact confidential information from Exhibit 4 of the Campbell Declaration, Dkt. No. 194 at 1; *see also* Dkt. Nos. 199–200. PUMA has indicated that it takes no position on whether these documents should be sealed. *See* Dkt. No. 166 at 2; Dkt. No. 194 at 4.

### A.   Legal Standard

Courts have recognized a "general right to inspect and copy public records and documents, including judicial records and documents." *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 & n.7 (1978)). Accordingly, when a district court considers a sealing request, "a strong presumption in favor of access is the starting point." *Id.* (cleaned up). This presumption, however, "is not absolute and can be overridden given sufficiently compelling reasons for doing so." *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir. 2003) (citing *San Jose Mercury News, Inc. v. U.S. Dist. Ct.*, 187 F.3d 1096, 1102 (9th Cir. 1999)).

The standard for determining whether to seal a record depends on the filing with which the sealed record is associated and whether such filing is "more than tangentially related to the merits of a case." *See Ctr. for Auto Safety v. Chrysler Grp.*, 809 F.3d 1092, 1098–1102 (9th Cir. 2016).

---

[1] PUMA filed the motion to seal in accordance with Local Civil Rule 5(g)(3). Dkt. No. 166.

1   If the filing at issue is more than tangentially related to the merits of the case, the court must apply
2   the "compelling reasons" standard to the motion to seal. *See id.* If the filing is only tangentially
3   related to the merits, the party seeking to seal the records need only show "good cause." *See id.*

4         Additionally, in this District, parties moving to seal documents must comply with the
5   procedures established by Local Civil Rule 5(g). Under that rule, the party who designates a
6   document as confidential must provide a "specific statement of the applicable legal standard and
7   the reasons for keeping a document under seal, including an explanation of: (i) the legitimate
8   private or public interests that warrant the relief sought; (ii) the injury that will result if the relief
9   sought is not granted; and (iii) why a less restrictive alternative to the relief sought is not
10  sufficient." LCR 5(g)(3)(B). The parties have certified that they conferred regarding their
11  respective motions to seal as required by the Court's Local Rules. Dkt. No. 166 at 2; Dkt. No. 194
12  at 4.

13  **B.    Good Cause Exists to Seal or Redact Some of the Documents at Issue**

14        As a threshold matter, Brooks contends that the "good cause" standard should apply to both
15  motions because the documents at issue were submitted as part of PUMA's non-dispositive motion
16  to compel and Brooks' opposition to that motion. Dkt. No. 183 at 3–4; Dkt. No. 194 at 4. The
17  Court agrees, as neither PUMA's motion nor Brooks' opposition goes to the merits of the case.
18  *See Kamakana*, 477 F.3d at 1179; *Fed. Deposit Ins. Corp. v. Hanson*, No. C13-0671-JCC, 2014
19  WL 12102177, at *1 (W.D. Wash. June 13, 2014).

20        The "good cause" standard requires the party seeking protection to show "specific
21  prejudice or harm" for each document it seeks to protect. *Foltz*, 331 F.3d at 1130. "Broad
22  allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not suffice.
23  *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992) (quoting *Cipollone v.*
24  *Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3rd Cir. 1986)). That the parties have executed a

ORDER ON MOTIONS TO SEAL - 3

protective order "does not presumptively entitle [them] to file confidential information under seal." Dkt. No. 92 at 1.

1. Exhibits 2–10, 12, and 17 to PUMA's Motion to Compel

Brooks contends that it "will suffer competitive harm if the information underlying Exhibits 2–10 [to PUMA's motion to compel] is not protected" because "[t]hese exhibits contain internal communications between Brooks and its advertising agencies about the strategy and development of Brooks' advertising campaigns as well as drafts of internal Brooks' advertising strategy documents." Dkt. No. 183 at 4.[2] These documents were designated as "Attorneys' Eyes Only" under the protective order, signifying that they "include proprietary business, financial, and intellectual property information and trade secrets that are more sensitive or strategic than confidential material, the disclosure of which is likely to cause significant competitive harm." Dkt. No. 183 at 1–2; *see also* Dkt. No. 92 at 2. Brooks avers that it "treats the strategy and development information contained in these internal documents as confidential and does not disseminate it publicly," and therefore "[d]isclosure of this internal strategy and development information would cause Brooks significant competitive harm by revealing these processes to competitors[.]" Dkt. No. 183 at 4. Brooks raises the following concerns:

- **Exhibit 2:** Brooks states that the emails disclose information about the "comms framework" and "messaging hierarchy" related to the campaign. Dkt. No. 183 at 4; *see also* Dkt. No. 171-1. These documents are also fully redacted in **Exhibit 10.** Dkt. No. 183 at 5; *see also* Dkt. No. 171-9.

- **Exhibit 3:** Brooks avers that this exhibit includes "feedback about [an] attached

---

[2] The sealed versions of Exhibits 2 to 10 of the Bolcar Declaration were filed as attachments to the sealed motion to compel. Dkt. No. 171; *see* Dkt. Nos. 171-1, 171-2, 171-3, 171-4, 171-5, 171-6, 171-7, 171-8, 171-9. The redacted versions of some of these exhibits appear to have been erroneously filed under seal. *See* Dkt. No. 170.

ORDER ON MOTIONS TO SEAL - 4

creative brief outlining key messaging for the campaign, target consumers, high-level creative deliverables, marketing channels, and other sensitive information." Dkt. No. 183 at 4; *see also* Dkt. No. 171-2.

- **Exhibit 4:** Brooks notes that there is discussion in this exhibit between Brooks and the third-party agencies of a "draft creative deck" that "disclos[es] the key strategy, messaging, visuals, and creative platforms used to market the products in the campaign." Dkt. No. 183 at 4; *see also* Dkt. No. 171-3.

- **Exhibits 5–7:** Brooks states that the emails in these exhibits contain discussions that "touch on draft campaign language, as well as the placement, order, and content of digital assets." Dkt. No. 183 at 4–5; *see also* Dkt. Nos. 171-4, 171-5, 171-6.

- **Exhibits 8–9:** Brooks contends that the emails in these exhibits contain the "strategy of an advertising campaign," as well as "internal feedback regarding the mobile and desktop campaign webpages, follow-on action items, and next steps[.]" Dkt. No. 183 at 5; *see also* Dkt. Nos. 171-7, 171-8.

Brooks also avers that the excerpts from the depositions of Carlee Bickley and Danielle Pepperl in Exhibits 12 and 17 to PUMA's motion to compel should be redacted to prevent disclosure of "sensitive competitive information, including how internal work product is generated and used by Brooks and its advertising agencies in the context of creative campaigns and the specifics of campaign tactical decisions, including how slogans are drafted and reviewed[.]" Dkt. No. 183 at 5 (internal footnote and citations omitted); *see also* Dkt. Nos. 172–73.[3]

Courts have found "good cause" to protect the type of sensitive business information found in the aforementioned exhibits when the party seeking to seal articulates reasonable and legitimate

---

[3] Brooks seeks to redact lines 45:1–4, 47:2–17 & 25, 48:1–7 & 20–25, 76:13–17, 131:5–25, 132:1–25, 133:1–14, 139:1–25, 140:1–10, 154:7–13 of Exhibit 12 and lines 110:14–24 of Exhibit 17. Dkt. No. 183 at 5.

ORDER ON MOTIONS TO SEAL - 5

concerns of competitive harm. *See, e.g.*, *Zunum Aero, Inc. v. Boeing Co.*, No. C21-0896-JLR, 2023 WL 7180636, at *3 (W.D. Wash. Nov. 1, 2023) ("The court has reviewed the documents and concludes that there is good cause for keeping them under seal due to Boeing's concerns about maintaining its competitive status and cybersecurity position."); *Sessa v. Ancestry.com Operations Inc.*, No. 2:20-CV-02292-GMN-BNW, 2023 WL 1795856, at *2 (D. Nev. Feb. 6, 2023) (finding good cause to seal exhibits that contain Ancestry's "competitively sensitive information regarding," *inter alia*, "strategies for the development and marketing of Ancestry's services"); *Orthopaedic Hosp. v. DJO Glob., Inc.*, No. 3:19-cv-00970-JLS-AHG, 2021 WL 3015413, at *2 (S.D. Cal. Feb. 22, 2021) (finding good cause to seal "confidential, business-sensitive marketing strategy"). This is particularly true when documents "contain the type of proprietary confidential information subject to . . . [a] protective order." *Crosby v. Amazon.com, Inc.*, No. C21-1083-JCC, 2023 WL 8472421, at *3 (W.D. Wash. Dec. 7, 2023).

After reviewing the exhibits, the Court concludes that there is good cause for keeping the majority of their contents under seal due to Brooks' legitimate concerns that disclosure of its internal work product, development information, and marketing strategies could result in competitive harm. However, Brooks has not persuaded the Court that certain requested redactions to the Bickley deposition—namely lines 45:1–4 (Dkt. No. 172 at 4), 47:2–17 (*id.* at 6), 48:20–25 (*id.* at 7), 76:13–17 (*id.* at 8), 139:14–25 (*id.* at 13), and 140:1–2 (*id.* at 14)—could, if disclosed, result in the claimed competitive harm. Brooks has also not persuaded the Court that the requested redactions from PUMA's motion to compel (which paraphrase certain information in the exhibits to be sealed) could result in the claimed competitive harm. *See* Dkt. No. 171 at 9–11, 14–15; *see also* Dkt. No. 183 at 2 n.2. Therefore, the Court grants in part PUMA's motion to seal and denies the motion with respect to all redactions in PUMA's motion to compel and the lines in Exhibit 12 referenced above.

ORDER ON MOTIONS TO SEAL - 6

2. <u>Exhibits A–C and Exhibit 4 to Brooks' Opposition to PUMA's Motion to Compel</u>

Brooks similarly alleges that it will suffer competitive harm if the information underlying Exhibits A–C and Exhibit 4 to its opposition to PUMA's motion to compel are not sealed. Dkt. No. 194 at 4–6. Specifically, Brooks raises the following concerns:

- **Exhibit A:** Brooks notes that the statement of work between Brooks and Huge "reveals specific, sensitive business information relating to the agreement between the two entities, including budget amounts, specifics regarding the scope of Huge's work such as certain . . . 'important initiatives,' specific deliverables for Huge to provide, and relevant timing and key milestones." *Id.* at 5. Brooks is concerned that disclosure of this exhibit "would cause Brooks significant competitive harm," as it "would reveal to its competitors the areas of Brooks' business targeted for potential improvement, key details regarding Brooks' finances and certain budgets, the nature of specific on-going and future Brooks products, and other information which could be used to undermine Brooks' position in the market." *Id.*

- **Exhibits B–C:** Brooks notes that Exhibits B and C "are drafts of an internal 'Run on Nitro' Creative Guide" that "reflect a variety of sensitive details regarding this marketing campaign, including target audience, messaging hierarchy, specific verbiage and messaging for campaign headlines, draft images and text for use on different creative platforms and digital assets, and other internal Brooks strateg[ies] for marketing its products to consumers." *Id.* at 4. Brooks is concerned that "[d]isclosure of this internal strategy and development information would cause Brooks significant competitive harm by providing Brooks' competitors unique insight into Brooks' strategy and processes for marketing products to consumers, which competitors would use as a basis to market their own products to the same consumer base." *Id.* at 4–5.

ORDER ON MOTIONS TO SEAL - 7

- **Exhibit 4:** This exhibit contains additional excerpts from the Bickley deposition, including portions that discuss "how Brooks products are developed and sold," "specifics regarding Brooks' internal creative briefs and campaign decks, including how these documents are used," and "other aspects of product development and marketing[.]" *Id.* at 5. Brooks avers that it "would suffer competitive harm from disclosure of this type of information, which reflects internal processes for developing and selling Brooks products." *Id.*

After reviewing the exhibits, the Court concludes that there is good cause for keeping Exhibits A through C under seal due to Brooks' legitimate concerns that disclosure of internal work product, development information, and marketing strategies could result in competitive harm. Although good cause is lacking for some of the content in Exhibit 4, that information is available to the public elsewhere in the docket, so the Court will allow Exhibit 4 to remain sealed.

The Court therefore grants Brooks' motion to seal.

### III.  CONCLUSION

The Court GRANTS IN PART and DENIES IN PART PUMA's motion to seal, Dkt. No. 166, and GRANTS Brooks' motion to seal, Dkt. No. 194. Docket entries 171-1, 171-2, 171-3, 171-4, 171-5, 171-6, 171-7, 171-8, 171-9, 172–173 and 199–200 may remain under seal. The Clerk is DIRECTED to unseal docket entries 170 and 171. Within seven days of the date of this Order, Brooks is DIRECTED to file copies of Exhibits 12 and 17 with only the following lines redacted: lines 47:25, 48:1–7, 131:5–25, 132:1–25, 133:1–14, 139:1–13, 140:3–10, 154:7–13 of Exhibit 12; and lines 110:14–24 of Exhibit 17.

Dated this 15th day of October, 2024.

Lauren King
United States District Judge